UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RUSSELL D. ELDRED,<br><br>      Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>      Defendant. | No. 2:11-CV-00056-JPH<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-motions for summary judgment noted for hearing without oral argument on June 8, 2012 (ECF Nos. 15, 21). Attorney Maureen J. Rosette represents Plaintiff; Special Assistant United States Attorney Robert L. Van Saghi represents the Commissioner of Social Security (Commissioner). The parties have consented to proceed before a magistrate judge (ECF No. 7). After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** defendant's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff protectively filed an application for Supplemental Security Income (SSI) in November 2007, alleging disability beginning December 1, 1996 (Tr. 13). The application was denied

ORDER GRANTING DEFENDANT'S
FOR SUMMARY JUDGMENT                                                - 1 -

1  initially and on reconsideration (Tr. 56-59, 68-72).

2  At a hearing before Administrative Law Judge (ALJ) Robert S. Chester on July 7, 2009, plaintiff, represented by counsel, and a vocational expert testified (Tr. 13, 29-53). On July 24, 2009 the ALJ issued an unfavorable decision (Tr. 10). The Appeals Council denied Mr. Eldred's request for review on December 23, 2010 (Tr. 1-3). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on February 4, 2011 (ECF No. 4).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both plaintiff and the Commissioner, and are briefly summarized here.

Plaintiff was 50 years old on the application date and 52 at the time of the administrative hearing (Tr. 20, 34). He obtained a Graduate Equivalency Degree (GED) in or about 1975, and attended school through the tenth grade (Tr. 34, 118). Although the plaintiff did some assembly-line work in 1995, he has not otherwise worked in the past fifteen years and has not maintained full time employment since 1989 (Tr. 34-36, 107, 115).

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the Act) defines disability as the as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medically "severe" impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be

disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work, that Plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) assessment is considered. If plaintiff cannot perform this work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by

substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432,

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                          - 5 -

433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

At step one the ALJ found that plaintiff has not engaged in substantial gainful activity since the application date (Tr. 15). At step two, he found plaintiff suffers from the severe impairments of sleep apnea, diabetes mellitus, and degenerative changes in the right knee, as these impairments more than minimally limit claimant's ability to work (Tr. 15). The ALJ did not find plaintiff's mental impairments severe. At step three, the ALJ found plaintiff's impairments do not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. 16). The ALJ found plaintiff less than completely credible because his statements regarding the intensity, persistence, and limiting effects of his symptoms were "inconsistent" with the ALJ's RFC assessment (Tr. 18). At step four, the ALJ found plaintiff has the RFC to perform a full range of work at all exertional levels but with specific non-exertional limitations. These limitations include the occasional use of ladders, ropes and scaffolds as well as avoiding concentrated exposure to hazards such as unprotected machines and heights (Tr. 17). At step five the ALJ found there are jobs that exist in significant numbers in the national economy that the plaintiff can perform (Tr. 18). The ALJ found plaintiff has not been disabled as defined by the Social Security Act at any time from the

application date through the date of the decision, July 24, 2009 (Tr. 22).

**ISSUES**

Plaintiff contends that the ALJ's RFC determination and decision is not supported by substantial evidence (ECF No. 16 at 6). Plaintiff contends that he is more limited, both physically and psychologically, than what was determined by the ALJ (ECF No. 14 at 6). Regarding his psychological impairments, which the ALJ did not consider severe, Plaintiff contends the ALJ improperly rejected the opinion of Amy Robinson, MS, and W. Scott Mabee, Ph.D. (ECF No. 16 at 7). Regarding his physical impairments, Plaintiff contends the ALJ's RFC determination was not based on substantial evidence, and he improperly discounted the opinion of Deborah Miller, ARNP (ECF No. 16 at 9). The Commissioner asks the court to affirm, asserting the ALJ's decision is supported by substantial evidence and free of legal error (ECF No. 22 at 7-11).

**DISCUSSION**

**A. Psychological limitations**

Plaintiff asserts the ALJ's finding of no severe psychological impairment is error, not supported by substantial evidence, and the ALJ improperly discounted the opinions of Amy Robinson, MS, and W. Scott Mabee, Ph.D. (ECF No. 16 at 6). The Commissioner answers that there is substantial evidence supporting the ALJ's finding that his alleged anxiety issues did not rise to the level of a severe impairment (ECF No. 22 at 8). The Commissioner is correct. A "severe" impairment is one which significantly limits physical or mental abilities to do basic work-related activities. 20 C.F.R. §§ 404.1520(c) and 416.908.

Plaintiff has the burden of establishing that his impairment is severe. *Erickson v. Shalala*, 9 F.3d 813 (1993). It must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. It must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not just the claimant's statement of symptoms. 20 C.F.R. §§ 416.908.

Step two is a de minimus inquiry designed only to weed out insufficient claims at an early stage in the sequential process. *Bowen*, 482 U.S. at 148. Claims are denied at step two only where a claimant's abnormalities are slight and do not significantly limit any basic work activity. *Id.* at 158. "Basic work activities" are the aptitudes required to do most jobs, including 1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; 2) capacities for seeing, hearing, and speaking; 3) understanding, carrying out, and remembering simple instructions; 4) use of judgement; 5) responding appropriately to supervision, co-workers and usual work situations; and 6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) and 416.921(b).

Substantial evidence supports the ALJ's determination that plaintiff does not suffer from a severe mental impairment. In 2008 Ms. Robinson, after completing her DSHS evaluation, opined that the plaintiff has moderate cognitive and moderate to severe social limitations, and Dr. Mabee adopted this opinion (Tr. 215-227). There is, however, substantial evidence from the DSHS evaluation indicating plaintiff's degree of mental impairment is not severe. The opinions of an examining physician can be rejected only with

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 8 -

clear and convincing evidence. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). On a "formal test of cognitive status" plaintiff scored 26/30, within normal ranges (Tr. 223). On the Rey-15 test, which tests response effort levels, plaintiff scored 12/15, suggesting that he was giving sufficient effort (Tr. 223). Plaintiff was administered the WAIS-IV, which tests general intellectual functioning, and scored in the average range (Tr. 223). His Verbal Comprehension score, his lowest percentile score on DSHS tests, was still in the "low-average" range and his Perceptual Reasoning score was within the average range (Tr. 223). On the Trail-Making Test, which assesses sequencing and visual search, plaintiff's scores were within the average range and were "not suggestive of impairment" (Tr. 223). Regarding social interactions, Plaintiff's function report indicates he talks on the phone with his family every day and has no problems getting along with family, friends, neighbors and others (Tr. 136). He also indicated he handles stress "pretty well" (Tr. 137).

   Ms. Robinson and Dr. Mabee concluded, based on the MMPI-2 test, that plaintiff was "over-reporting negative symptoms" (Tr. 223). This is supported by the fact that plaintiff has not sought treatment, either in the form of counseling or medication, for his mental impairment. Ms. Robinson recommended plaintiff "see a physician to determine if medications would be appropriate to help reduce his depressive symptoms," however, plaintiff did not follow through (Tr. 224). Ms. Robinson also indicated mental health intervention would help plaintiff decrease his depressive symptoms, and thus his ability to work for pay in a regular and predictable manner (Tr. 219).

The DSHS assessment resulted the diagnoses of Methamphetamine Dependence (DSM Code 304.40) and Major Depressive Disorder, Single Episode (DSM Code 296.22). Regarding amphetamine dependance, Ms. Robinson indicated plaintiff's acknowledged drug use "may increase his other symptoms" and drug treatment would be "likely" to decrease the "severity of the condition" (Tr. 217). It is therefore difficult to determine the degree to which plaintiff's mental impairment interferes with his work related activities. The logical inference is that a claimant's drug use is material to his impairment when, after one month clean, his impairments are still disabling. *Ingram v. Barnhart*, 72 F. App'x 631, 636n.30 (9th Cir. 2003). Plaintiff acknowledged his use of methamphetamine at the time of the appointment, and it is therefore difficult to discern the impact on disability relating to drug use from mental impairments when considering whether or not mental impairments are severe. Ms. Robinson indicated plaintiff was "encouraged to continue with out-patient treatment services, helping him stay clean and sober," but there is no indication plaintiff fulfilled this recommendation (Tr. 224). In fact, Ms. Robinson cited plaintiff's non-compliance as a barrier to effective drug treatment (Tr. 219).

The findings of Ms. Robinson and Dr. Mabee were properly disregarded by the ALJ. Plaintiff's application for benefits was initially denied on February 28, 2008, yet his DSHS assessment took place on November 4, 2008. It is established that "after the fact" psychiatric findings are "notoriously unreliable" and therefore less persuasive. *Vincent v. Heckler*, 739 F.2d 20, 23 (9th Cir. 1989). Moreover, Ms. Robinson indicated there were "no

medical records available," and then made diagnostic findings based on the single November 2008 visit. Plaintiff was not seen again by Ms. Robinson or Dr. Mabee. It is difficult to establish an inability to engage in gainful activity for a period of no less than twelve months on the basis of a single visit. Indeed, the DSM diagnosis of Major Depressive Disorder, Single Episode under code 296.22 is described as having symptoms "during the same 2-week period." Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV), at 320-327 (1995). Additionally, Ms. Robinson categorized the plaintiff as "Acutely mentally ill" under RCW 71.24.035, which is defined as a condition which "is limited to a short-term severe crisis episode" RCW § 71.24.025 (2008).

Substantial evidence supports the ALJ's finding plaintiff's mental impairment was not severe. Additionally, the ALJ provided clear and convincing evidence for disregarding the findings of Ms. Robinson and Dr. Mabee.

**B. Physical limitations**

Plaintiff alleges the ALJ improperly rejected the opinion of Deborah Miller, ARNP, and erred when he assessed an RFC for a full range of work at all exertional levels, with specific caveats (ECF No. 16 at 6, 9-10). The Commissioner answers that substantial evidence supports the ALJ's evaluation of the medical evidence (ECF No. 22 at 10-11). The Commissioner is correct.

After considering all of the plaintiffs alleged impairments, the ALJ found he suffered from the severe impairments of sleep apnea, diabetes mellitus and degenerative changes in the rights knee (Tr. 15). At step 3, the ALJ determined plaintiff did not have an impairment or combination of impairments that meets or

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                     - 11 -

medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. 16). After considering all of plaintiffs alleged impairments, including those that are non-severe, the ALJ found plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible (Tr. 18). Generally, the ALJ found plaintiff had not received the type of medical treatment one would expect for a totally disabled individual, given infrequent trips to the doctor and a lack of follow up with recommended courses of treatment (Tr. 18).

Regarding plaintiff'sسleep apnea, the ALJ considered that although plaintiff was diagnosed with the condition in 1994 and given a CPAP machine, he chose not to use it (Tr. 168, 183). At the consultative examination in January of 2008, plaintiff asserted he had difficulty staying awake during the day and staying asleep at night (Tr. 183). At this examination A. Peter Weir, M.D., recommended he pursue treatment including the use of a CPAP machine; however, plaintiff never followed through with this recommendation (Tr. 183-187). Once an underlying impairment that could reasonably be expected to produce the alleged symptoms has been shown, the ALJ must evaluate the intensity, persistence and limiting effects of a plaintiff's symptoms to determine their effect on work-related abilities and the RFC determination. Among the factors the ALJ may consider when assessing the credibility of plaintiff's statements is "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of

1  treatment." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

2  Regarding plaintiff's diabetes mellitus, the ALJ similarly
3  found that while plaintiff alleged that his diabetes was worsening
4  with time, plaintiff was nonetheless not compliant in taking his
5  prescribed medication, and this is the likely cause of diabetes
6  symptoms (Tr. 19, 183). Records from plaintiff's incarceration in
7  2007 indicate that during this time, while on Metaformin, his
8  blood sugars were normal (Tr. 175). Additionally, records indicate
9  while his blood sugars were 482 on July 21, 2008, and 308 on
10 October 23, 2008, they dropped below 200 by January 2009,
11 following the reinstatement of his Glucophage medication by
12 Jacqueline Laughlin, FNP, in October 2008 and early 2009 (Tr. 237,
13 256, 264).

14 Regarding plaintiff's impairment of the right knee, the ALJ
15 found minimal evidence to support the alleged limitations on his
16 ability to stand, walk or sit (Tr. 18). In January 2008, Dr. Weir
17 diagnosed plaintiff with degenerative knee arthritis; however, no
18 imaging was completed (Tr. 184-186). When images were taken in
19 February 2008 on the orders of Gene Profant, M.D., the results
20 showed a "mild narrowing of the medial femorotibal compartment"
21 with otherwise "no significant osseous [or] articular soft tissue
22 abnormalities seen about the knee" (Tr. 192). In July, 2008
23 plaintiff had an MRI on his right knee which showed "essentially
24 negative noncontrast right knee MRI" (Tr. 268). He was diagnosed
25 in October 2008 with osteoarthritis, but this was based on self-
26 report alone and not objective medical tests (Tr. 254). After
27 twisting his knee and complaining of pain, a January 2009
28 examination revealed "no tenderness along the joint lines, no

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                    - 13 -

swelling, no bruising, no tenderness about the patella" (Tr. 256). In April of 2009, plaintiff was again seen for pain in his right knee, and while some tenderness was indicated, his patella was intact, there was no edema in his knee, and his deep-tendon reflexes were noted as normal (Tr. 258). Despite these examinations, he was not referred to a specialist for further knee treatment, indicating that his symptoms may not have been as debilitating as he alleges.

The ALJ also considered all of plaintiff's non-severe impairments, including those of his right wrist, Hepatitis C, Hidradenitis Suppuritiva, shortness of breath and frequent urination, and in each case provided substantial evidence, supported by the record, for the weight assigned to each of these impairments in his RFC determination (Tr. 17-20).

The plaintiff alleges the ALJ improperly disregarded the opinion of Nurse Miller in assessing his RFC (ECF No. 16 at 9-10). Nurse Miller, of Spokane Falls Valley Clinic, diagnosed right knee degenerative disease, headaches, diabetes, and right wrist problems in October of 2009, and opined on his functional work limitations (Tr. 262). This diagnosis was based on a single visit and examination on September 30, 2009, although plaintiff had been seen at the clinic on other occasions (Tr. 260-268). Plaintiff asserts Nurse Miller should be considered a treating physician, with special weight granted to her opinion, while the Commissioner asserts she is not a treating physician. The Commissioner is correct. In a disability proceeding the treating physician's opinion is granted special weight due to the familiarity with the claimant and his physical condition. *Fair v. Bowen*, 885 F.2d 597,

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                          - 14 -

604-605 (9th Cir. 1989). Nurse Miller's single visit and examination of plaintiff does not establish such familiarity. Furthermore, Nurse Miller is not a physician, and her opinion is not entitled to controlling weight. Social Security Ruling (SSR) 06-3P. In considering the weight to be granted to non-treating medical sources, the ALJ considers factors such as the length and frequency of treatment, the consistency of the opinion with record medical evidence, the specialty of the source, and any other factors which support or refute the opinion. 20 C.F.R. § 416.927(f), 416.913. The ALJ provided clear reasons for disregarding Nurse Miller's opinion, including the lack of objective medical evidence to support the symptoms in question and the lack of effort on the part of plaintiff to secure recommended treatment for his ailments (Tr. 20). The ALJ granted proper weight and consideration to Nurse Miller's opinion.

## CONCLUSION

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is free of legal error and supported by substantial evidence.

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 21,** is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment, **ECF No. 15,** is **DENIED.**

The District Court Executive is directed to file this Order, provide copies to counsel for the parties, enter judgment in favor of Defendant, and **CLOSE** the file.

DATED this 13th day of August, 2012.

                                s/ James P. Hutton
                              JAMES P. HUTTON
                              UNITED STATES MAGISTRATE JUDGE